Good morning, Your Honors. Michael Lopez of Lopez Barkin Schultz for Appellant SBE Electrical. May it please the Court, I'd like to just make four points. They're very related to each other. They sort of flow into each other and I will, of course, answer any questions you may have. So, the first point is that in this case we're dealing with a duty to defend case. And the operative allegations that are necessary for evaluating the duty to defend are very discreet. There are three or four, depending on how you look at it. The first- Can you please get to the J6 exclusion? I guess that's where I'm having- why isn't that a problem for you all? Because none of the allegations that are necessary for my client's potential liability in this case involve incorrect work. And if there are no allegations of incorrect work on which my client's potential liability- But hold on. Because it was settled, the judge- it was settled, correct? Absolutely right. So then the judge has to take that into consideration in determining, you know, its position. I mean, I guess that's the problem I'm having. I don't think that's true, Your Honor. I think that the settlement is something that is taken into consideration with respect to the indemnity obligation that the insurer may have. And there are presumptions that apply to that if the duty to defend has been wrongfully denied. But with respect to the duty to defend, the only question is whether there are allegations in the underlying- in this case, counterclaim, normally you'd say complaint- that give rise to potential for coverage. And there are allegations at issue in the underlying case here that give rise to potential for coverage that have nothing to do with any incorrect work whatsoever. Well, part of the contract required you to take all action- or your client- to take all action to protect the switchgear, correct? Yes, Your Honor. And apparently that was not done. So is that incorrect work or not incorrect work? Well, it depends on what you mean by incorrect. Well, it depends on what you're arguing incorrect means. Right. So let's take an example. My client has installed switchgear. They've hooked it up to the utilities. They've drilled the holes for the conduits to carry the power to the rest of the plant. And then there's a fire. And the entire structure collapses. And the basements collapse and the switchgear is destroyed. Did my client do anything wrong? I don't think so. There's certainly no- even a hint of incorrect work there. And the presence of hundreds of gallons of water pouring down into a basement filled with electrical equipment seems to me to be exactly the same sort of scenario. My client doesn't need to have done anything wrong to have been liable in this case. But I guess I just want to make sure I understand what we have to decide. Because I think that we have to look at the allegations that Palmer was making, right? Their allegation was that there was improper work. Yes. And that- and so the judge looked at that and looked at those allegations and then determined, well, there was a settlement. So I can't look at whether or not there was proper or improper work. This was an allegation that was made. Isn't that sufficient for the judge to ultimately conclude that, in fact, there was an exclusion that applied? No, I don't think that's sufficient at all, Your Honor. The judge and the insurer in this case both have an obligation to look at the pleading that is put in and also take into account any other facts that they may know and look to see are there allegations here that give rise to a potential liability, which is what I- What do you do with the settlement? What do you do with the settlement? Nothing is needed with the settlement at the duty to defend stage, Your Honor. I'm not- I don't entirely understand what the settlement has to do with the existence of the insurer's duty to defend. Well, because it was settled, right? So the district court judge looking at that and looking at J6 has to determine whether or not there was improper work, right? No. Okay. Mr. Lopez, let's assume that we don't agree with you on your first point and get to the construction, as Judge Mendoza was suggesting, of J6. I mean, so assume that the allegations are of work incorrectly performed. Are there other aspects of J6 that get you out of the exclusion? But this is what I'm trying to tell you, Your Honor, is that the allegations that could potentially hold my client liable, that are covered by the policy, the allegations that are in the complaint have nothing to do with incorrect work. There are specific allegations that give rise to potential liability that have- and I can list them out if you'd like. Well, so I guess to distinguish between the allegations of whether the work was incorrect or not and what the work was. So why isn't it enough to trigger the exclusion that the switchgear was property that must be restored, repaired, or replaced? Do you agree with that? Yes. Okay. And that- and then so the question is whether- and do you agree that if your work was incorrectly performed, that, according to the allegations, would have been on the damaged property? It sounds like you're starting to talk about J5 there when you're talking about the operations. No, your work was incorrectly performed on it. Sorry, I didn't mean- I mean your work. Yes. Yes. Okay, so on it. And so then the question is whether whatever your work is, which is a defined term, was incorrectly performed. Let's set aside whether the incorrectly performed discussion and discuss whether this was your work. And I think Judge Wardlaw asked the question that the scope of work includes a duty, sub 8, ER 376, to use all means necessary to protect material before, during, and after installation to protect the installed work. Is that part of your work, in quotes, that is included in J6, that duty to protect? That is absolutely part of my client's work under the contract. And there is absolutely nothing in this case, anywhere in the record or anywhere in the record of the underlying case, that establishes that it was incorrectly performed, nor was it necessary. Well, this goes back to the discussion you were having with Judge Mendoza about- this is about coverage at the outset. It's whether they need to come in, defend, cover, etc. And we don't know where these things will go. There's been no determination of whether it was incorrect or not. It's just whether the allegations could lead there such to trigger coverage or to trigger the exclusion. Assuming that's where we are, and I agree or might disagree with your first point, you otherwise concede that the switchgear is the property in J6. Your work includes the duty to protect and sub-8 of the contract. And that any work that was performed, correctly or not, was performed on the switchgear. You concede all that? Any work that was performed on the switchgear was performed on the switchgear. Well, I get the allegations, though, are that- the conduit that was running from the switchgear, if I'm getting this generally right, the water's come in there. That's part of your work, the hole up there, too. If the water indeed did come through the hole, then yes. And that's work on- and you would call that work on the switchgear? No, I wouldn't, Your Honor. Okay, so is that why- And I also- I'm sorry. Why not? Why not? Because you drilled the hole to get it- to put the conduit in it, why is that not the work? Because it has to be incorrect, Your Honor, and the hole's supposed to be there. No, we don't want to- I'm not- I'm sorry, I don't want to speak for Judge Mendoza, but I'm not interested in whether it's correct or not. I want to know whether the work you did in drilling the hole for the conduit to the switchgear, why do you maintain that was not on the switchgear, that hole? Because the switchgear is a separately line-itemed piece of equipment. And this is the global modular, it has to be the particular property- it has to be the particular part of it. I mean, we could go down that road if you wanted to talk about J5. The part of the property that has to be replaced is the switchgear. And your work- you're narrowly construing your work as to the switchgear as stuff narrowed to the switchgear itself, not stuff around the switchgear. Your work- I was asked if that was work on the switchgear, and I said no.  It's still part of our work. Our work includes, you know, putting in the circuitry for hundreds and hundreds of condominiums across three buildings. That's my point, is that your work was broader. You're arguing your work was broader than what work you did on the switchgear. With respect to J6. Right, I get that. We're talking about J6. Yes. We're talking about J6. I'm sorry, I didn't quite finish my sentence. Okay. With respect to J6, I'm saying it doesn't matter because there isn't any established incorrect work at all, anywhere in the record. But you know, there only has to be allegations of incorrect work in the underlying counterclaim, right? No, Your Honor, that's not true. No, there has to be a potential for liability. Yes. Right, so I'm assuming your potential for liability would come from allegations in the counterclaim, correct? That is absolutely correct, Your Honor. But as I said at the very beginning, there are allegations in this complaint sufficient to establish a potential for liability for my client that have nothing to do with incorrect work. Okay, that's what I'm saying. Okay, so, okay. That's why I'm looking at on it too, although I'm not sure you raised that argument in your blue brief. Which argument? That 6 pertains to work, your work, on it, the switchgear. It's narrowed to the switchgear itself and not anything else. That's because that's not important. That isn't one of our arguments, Your Honor. It is not? It is not. So you concede, in other words, that assuming it was incorrectly performed. We understand that that's one of your arguments. We just need to get to other arguments too. Assuming it was incorrectly performed, your work, which includes the duty to protect on it, right, stipulating that on it with respect to the switchgear, is your entire electrical work up to however many stories the building is, way above the basement and other buildings, that any incorrectly performed work, stipulate that, on anywhere in those other buildings would trigger J6 as to the switchgear? If it was the cause of the damage, yes, Your Honor. So the on it is doing no work for you here. That's not one of your arguments. If I may take two seconds to look at the language. Yeah, yeah, this is, you should get J6 in front of you. That's where I think I'm focused. Particular part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it. So the particular part of any property that must be repaired, restored, or replaced is the switchgear. Your work is the work as defined here, including the duty to protect the materials of other trades and installed work. And assuming you're incorrectly performed, why wouldn't the exclusion apply? Our work on the switchgear. It sounded like you were saying, if we performed work in another building, that was incorrect, and it damaged the switchgear, would that be excluded by J6? Is that what you're asking? Yes, in combination with your duty to protect the work of all other trades. I mean, I don't understand what other trades you mean. Well, your work includes... You mean our duty to protect the switchgear. Your work, of course, includes the switchgear, but I think we'd asked you earlier, under sub 8 of the scope of work, your work also includes protecting the work and materials of all other trades. Yes, Your Honor. So that work is happening all over the building, because there's all sorts of other trades, with respect to anything that you may be working on. If your work is on property that's damaged, anywhere in the building, because you have a duty to protect the work of those trades, that's within the scope of your work. And if we perform work incorrectly on any other property, including the work for the trades, yes, J6 would apply. Okay. And in this case, it just so happens that the switchgear is your materials, is your trade. Yes, it is. And it is undisputed that you all put in the conduit, correct? Yes, we put in the conduit. We drilled the holes. We installed the switchgear. It's also relatively undisputed that we had nothing to do with the water intrusion at all, right? That was an outside force, flooding of the basement, broken pipes, rain pouring down into the sub-basements, into a room with sensitive electrical equipment. All right? One of the things that the Global Modular Court— Wasn't it necessary to protect that material under your scope of work, though? We were liable for the damage, and yes, I mean, if we want to avoid contractual liability, we would have to figure out a way to protect it. But sometimes, and this is what the Global Modular Court recognized, and what we all intuitively know, sometimes you can do everything right and still lose. A meteor could hit the site, right? There's nothing you can do about that. There's not always going to be things that you can do to protect your work. And that's not going to change your liability, but it will absolutely change the application of J6. That's exactly what the Global Modular Court recognized, is that there was not evidence sufficient in that case, just as there isn't evidence here, for the insurer to meet its burden of proving that the exclusion applies. Because the insurer has to prove that. They have to prove that there was incorrect work. But the exclusion wouldn't apply if a meteor hit it because you weren't performing any work on it. But we weren't, well, I mean, we were still installing it and still drilling things. The meteor didn't hit it because. Well, I don't want to talk about meteors here for a second. I'm sorry to interrupt. But I guess I want to go back to a statement you just said, because I think that's an incorrect statement of the law. Because, according to Century Select Insurance versus Royal, we have to look at the undisputed facts when there's a settlement. And as the undisputed facts here indicate that you all created, again, the conduit and all of the other stuff, right? So if you all created that and during the settlement that was negotiated away, isn't that actually sort of a big problem for you all? I don't understand why you would think that there are undisputed facts in the settlement pertaining to anything having to do with how the water got in or the work that we did. Well, you settled. That's right. We settled because there was a contractual liability clause that made us liable for damage to the switchgear absolutely no matter what, no matter how it happened, because the work had not yet been accepted, right? And those facts, this is what I started out the argument with. Those facts are in the counterclaim. The existence of the contractual requirements of our liability for any damage, the fact that water poured in, the fact that Palmer was damaged to the tune of $10 million or more, and our liability for it. And none of that has anything to do with our work. It has nothing to do with where the water came from. It has nothing to do with our doing anything incorrectly. It just has to do with raw contractual liability. And it's sufficient to activate a potential for coverage that the insurance company has an obligation to respond to by defending us. And they didn't defend my client. And so my client went out and settled as it's allowed to. And there's nothing in any of those allegations that I just described. And like I said, I can tell you where they are. There's nothing in there about our doing anything wrong, about our drilling holes, about our failing to cover. It's raw, pure, strict contractual liability. And it's for property damage caused by an occurrence. So it's covered in the first instance by the insurance policy. And that shifts the burden to the insurer to show through evidence that the exclusions conclusively apply. Because if there are no allegations that are triggering the liability, no allegations of incorrect work, no allegations of our involvement with the water, if those allegations are not necessary for our liability, then the insurer has to actually come up with evidence and say, this is why the exclusion applies. And they cannot do this on this record, just as they couldn't do it on the record in the global module. But what stage of proceedings? Are we in the motion to dismiss stage? It's a Rule 12c judgment on the pleadings motion, Your Honor. Oh, judgment on the pleadings. Okay. And I see the paragraph in your answer and counterclaim of SB paragraph 40. You say the argument you're relying on now. SBE could thus potentially be found contractually liable to Palmer for water damage to the switchgear, regardless of whether SBE was negligent, performed any work incorrectly, or failed to meet any applicable standard of care. That's your point, right? That is my point, Your Honor. Yes. Okay. I think I finally get it. Okay. You're over your time. I apologize for going over, Your Honor. It's okay. We're asking a lot of questions. May it please the court and good morning. Dan Kadabaw for Associated Industries Insurance Company, Inc. I'd like to turn to the point in the report you just had with Mr. Lopez, my friend over there, about whether or not there were allegations in the underlying pleadings of incorrect work. Mr. Lopez has vociferously told you there were none. I frankly don't understand how we got to this point. I am on the third volume of the excerpts, page 432, the first paragraph of Palmer's counterclaim. Respondent brings this counterclaim to recover the astronomical damages claimant has caused by their plainly deficient and non-code compliant electrical work. Is that electrical work on the switch gear? Yes. And that is the next page, Your Honor, page 433 of the excerpts. Paragraph 6. One of claimant's failures in particular caused extraordinary harm to respondent. Claimant did not protect the main switch gear from water intrusion, even though that responsibility is squarely allocated to them by the party's agreement. And when it says squarely allocated, we're looking at exhibit A to the construction contract, which says at the beginning, the scope of work to be performed by trade contractor shall be in accordance with and shall include without being limited to the following. Paragraph 8. This is page 376 of the excerpts, by the way. Trade contractor shall use all means necessary to protect material before, during, and after installation. So there you have it right there. That's basically everything you just asked Mr. Lopez. There are allegations of incorrect work on the switch gear, failing to protect it. That is contractually made part of SBE scope of work. And then Palmer goes on to allege all the ways in which SBE failed to protect the switch gear. There's the drilling of the conduit holes that were not sealed. Then there is an alleged failure to place tarping over the switch gear in accordance with industry standards. And then there is also the failure to place curbs around the switch gear to repel water. Those are Palmer's three allegations of defective work by SBE. And that is what Palmer alleged caused the damage to the switch gear. And there's not just a contract claim. There's a negligence claim. No, there's a breach of contract claim and there is a negligence claim. And on the breach claim, it is essentially the same thing as the contract claim. I mean, or excuse me, the negligence claim. They both say the same thing. They just plead the different standards of the different claim. And why is that enough to show that it was incorrect? Why is what enough? Why is these allegations here? Just to finish the thought in terms of it, your friend says, well, those aren't allegations that we did it incorrectly. It just shows that we breached the contract. But those are allegations that they did it correctly. When it says that you have a duty to protect the switch gear, and then Palmer alleges you failed in your work to protect the switch gear. Here is how you failed to do that by doing nothing to tarp it, by failing to place water repellent barriers around it, and by drilling unsealed holes around it. You failed to protect the switch gear from water intrusion. How much does your argument on J6, I guess, turn on the particular phrasing of work on the switch gear? And in other words, so if we understand, it sounds like there's agreement that paragraph eight of the scope of work brings in a duty to protect everything everywhere in the building. So are there any limits to that? So if their work negligently causes damage to property that wasn't, you know, the switch gear, but was, you know, in some other building, the exclusion would apply? Are we talking about in a world where the switch gear is still damaged and that's what Palmer sues for? No, I mean, I think that's what, so as we read J6, if you sued for damage to the plumbing in another building because somehow they hadn't protected that material, they drive a truck in and it breaks a pipe or something. So that's excluded too? We're saying, would it be excluded if a plumbing pipe had broken because SBE drove a truck into it while it was working at the property? Yeah. Asking if J6 would exclude that. Yeah. It depends on if they were in the process of working and if they were doing work on the pipe. But if we're just saying they drove a truck. Well, the process piece is more of a J5 thing as I understand, but with J6, so if they drove a truck over the pipe, you're saying, yeah, so there wouldn't be in that scenario. Were they doing work on the pipe? No, the truck was carrying the switchgear that they were going to install. Right, but we're not talking about a damaged switchgear. We're talking about a broken pipe. Yeah. I don't believe they're doing work on the pipe as J6 would say. So that would be a limitation because I guess I was trying to understand. So in other words, ONIT is doing important work here in terms of limiting because otherwise if ONIT is not limiting the scope of the J6 exclusion, the insurance policy doesn't cover very much at all in terms of accidents that might happen away from their work. If it didn't limit it to the scope of what the insurer is working on, I mean, it would effectively be a blanket exclusion for any liability at all. That would be illusory insurance policy. Yeah, it would, Judge Johnstone. And it's just that's such an attenuated hypothetical. It's hard for me to understand and I certainly mean no insult here. That really has nothing to do with what Palmer said happened and what they sued for. Palmer said, you broke my switchgear. The key is if the work, if we're incorporating paragraph 8, as I think both parties are, into your work in J6, ONIT has to be a limiting principle to prevent them from being excluded from coverage of anything that happens to installed work and materials, to all those other trades. Sure, you look at what was alleged. It was damage to the switchgear. I had to replace the switchgear because it was, you know, the water intrusion shorted it out. It was not accepted. It had to be replaced. So what work was done on the switchgear? That's what the exclusion asks. Okay, now why is the hole away from the switchgear? I've seen photos and the hole's over there. The switchgear's here. Why is that work on the switchgear? Yeah, as Mr. Lopez said, it's part of the conduit drilling to run power to and from the switchgear. So you're agreed there to? Yes. Okay. We seem to be, as far as I can tell. That's what I took too. Yeah. So if we're in agreement that it was work on the switchgear and the switchgear had to be replaced, the only question that remains for J6 textually and very unambiguous is, was it incorrect work? That's all Palmer alleges. I mean, Palmer goes through. There's a subsection in its counterclaim. We're on page 434 of the excerpts. Subsection B, starting before paragraph 13, it's titled claimant's deficient work, goes through some of the shoddy workmanship allegations that are not at issue here, gets to page 436 of the record, starting with paragraph 23. And then it goes through all the ways in which claimant failed to protect the project-level electrical equipment at the property, the switchgear. Then it lays out everything I just got up here and said. Drilled unsealed holes, didn't curb, didn't place water barriers around those holes, didn't place tarping over the switchgear, didn't place any water barriers around the switchgear. That's what Palmer alleged caused the damage to his switchgear, and that is SVE's work. And getting to a point Judge Mendoza was talking about with Mr. Lopez, then you settle the claim. And in the settlement, there's a recital that says SVE, or excuse me, Palmer alleged that SVE caused all of this damage. They used the word caused. So when Mr. Lopez says that there's no allegation and no ability to discern shoddy workmanship or incorrect work in the switchgear, that's the only thing that was alleged, and that's the only thing that was settled. So by its terms, J6 should apply. It should be an open and shut case. If there are no further questions on J6, are there further questions on J5? Because I noticed we have not actually addressed that yet. Well, do you need both? You don't need both. You just need one. You just need one exclusion to eliminate coverage. Right. So maybe we're not talking about J5 for a reason. OK. Well, Your Honors, pending further questions, I will cede the rest of my time. All right. Thank you. Thank you very much. Associate Industries, Insurance Company versus SB Electrical. Oh, I'm sorry. Do you have rebuttal? I took up all my time answering your questions, Your Honor. If I could have 60 seconds, I would agree with that. OK. I'm sorry. Yes. I didn't notice that you were wanted. You didn't ask for it, among other things. But now you have. I'm sorry. Your clerk did remind me to tell you that I had reserved four minutes. I neglected to mention that at the outset. This won't take but 60 seconds. OK. It is true that this counterclaim, this is the Palmer counterclaim, has dozens of allegations of negligent work, of mistakes, of how we caused the water damage. But nothing has been established at all in that. And there are three allegations. The allegations are that the contract has a provision that holds us responsible for damage until the switchgear is accepted, period. There's an allegation that the switchgear was damaged by water. And there's an allegation that Palmer suffered $10 million of damage. You pull those three allegations out, you don't take anything else with it. SBE can still be liable under that theory. And that potential for liability under those allegations activates the duty to defend under Gray v. Zurich. You have the duty to defend the entire action. You have the duty to get in there and defend us against negligent claims. That's all I wanted to say, Your Honor. Is that it's a very... The duty was triggered, so the insurance company should have defended you in the lawsuit until such time as there was proof? If it ever became established that the sole source of our liability was, in fact, our negligent work, or even that the damage had, in fact, been caused by our negligent work, or that some other exclusion applied, then yes, the insurer can then say, we will stop defending and you're on your own. But that's not what happened here. Okay. Thank you. This case will be submitted.  And you're welcome. Thank you. And the last case on our docket for today, Martinez v. City of Los Angeles, has previously been submitted.
judges: WARDLAW, MENDOZA, JOHNSTONE